UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SEAN QUINTON BENEFIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00706-SEB-KMB |
| | ) | |
| CENTURION HEALTH SERVICES, LLP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING LEAVE TO AMEND COMPLAINT AND
DENYING MOTION TO APPOINT COUNSEL**

Plaintiff Sean Quinton Benefiel, who is incarcerated at New Castle Correctional Facility ("New Castle"), asks the Court for leave to amend his complaint. Dkt. [41]. He has also filed a motion asking for the appointment of counsel. Dkt. [27]. For the reasons below, that motion for leave to amend is **granted** and the motion for counsel is **denied**.

**I.     Motion for Leave to Amend**

Mr. Benefiel initiated this lawsuit by filing a complaint on April 11, 2025. Dkt. 1. Because Mr. Benefiel is a "prisoner," the Court screened that complaint pursuant to 28 U.S.C. § 1915A(a), (c). Dkt. 16. The Court determined that the action would proceed on Mr. Benefiel's Eighth Amendment claims against Centurion, Sergeant Gilbert, Officers Rice, Salgado, and Fennig, and Nurse Lee and his First Amendment retaliation claim against Officer Salgado.[1] *Id.* at 5. The Court dismissed claims brought against an unknown doctor but told Mr. Benefiel he could seek leave to add a claim against the doctor if the doctor's identity became known. *Id.* at 4–5.

---

[1] According to the correctional defendants' answer, dkt. 32, the correct spelling of the surnames of the defendants identified as "Selgado" and "Finning" by Mr. Benefiel are "Salgado" and "Fennig." Dkt. 32 at 1.

1

In the motion to amend, Mr. Benefiel states that he did not have his medical records when filing his original complaint, so he did not know the names of all of the defendants. The Court is to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Finding that justice requires it, the Court grants leave to file the amended complaint. However, the Court must still screen the amended complaint pursuant to 28 U.S.C. § 1915A(a), (c).

### A.  Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### B.  The Amended Complaint

The Court accepts Mr. Benefiel's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).

In the amended complaint, Mr. Benefiel names Dr. Thomas Millikan, Nurse Darlene Lee, Officer Fennig, Officer Salgado, Centurion Health of Indiana, LLC ("Centurion"), Dr. Rodolfo Echeverria, and NP Teah Jackar as defendants. Dkt 41-2 at 1–2.

Mr. Benefiel alleges that on August 12, 2024, Dr. Thomas Millikan took multiple hours to respond to Mr. Benefiel's complaints of swollen testicles, a knot in his groin, and severe pain, resulting in the loss of Mr. Benefiel's left testicle. *Id.* at 9, 11. Dr. Millikan also refused to provide Mr. Benefiel with a wheelchair or gurney despite his excruciating pain, which was exacerbated by walking. *Id.* at 9–10. Despite Mr. Benefiel being prescribed levofloxacin, he did not timely receive it. *Id.* at 10. Mr. Benefiel alleges that he received delayed healthcare from Dr. Millikan in retaliation for the grievances and complaints that he files. *Id.* at 10.

Mr. Benefiel alleges that Nurse Darlene Lee refused to call a signal for a medical emergency for him despite his swollen testicles and extreme pain. *Id.* at 13. Nurse Lee stated that she was aware of his situation but could not help as she was busy passing out medication. *Id.*

Mr. Benefiel alleges that Officer Salgado refused to call a signal for Mr. Benefiel, despite his obvious and severe pain. *Id.* at 15. He knew that medical was not responding in a timely manner but did nothing about it. *Id.* He also made Mr. Benefiel walk despite knowing that it was causing severe pain. *Id.* at 16. Mr. Benefiel also alleges that Officer Salgado denied him cold drinking water and said he would "fuck [him] up" if Mr. Benefiel did not stop filing grievances against him. *Id.*

Mr. Benefiel alleges that Officer Fennig, the officer assigned to transport Mr. Benefiel for emergency medical care, initially refused to get a wheelchair or gurney or call a signal for Mr. Benefiel. *Id.* at 14. Then, once she did get a wheelchair, she refused to push it. *Id.*

3

Mr. Benefiel alleges that Centurion has a practice, policy, or custom of inadequately staffing medical personnel at New Castle and denying pain medication and wound care and that, through this, Centurion violated his rights under the Eighth Amendment. *Id.* at 3–4.

Mr. Benefiel alleges Dr. Rodolfo Echeverria violated his Eighth Amendment rights by not prescribing antibiotics and pain medication or providing instructions for post-operative care after Mr. Benefiel's left testicle was surgically removed. *Id.* at 8. Mr. Benefiel alleges this resulted in an infection and months of severe pain. *Id.*

Mr. Benefiel alleges NP Teah Jackar violated his Eighth Amendment rights by rescheduling his medical appointment from August 29, 2024, to October 5, 2024 (though he was ultimately seen on September 10), even though she knew Mr. Benefiel was in severe pain, had an infection, and needed pain medication, antibiotics, and dressings. *Id.* at 5–6.

Mr. Benefiel requests monetary damages and a sincere apology.

**C.  Discussion of Claims**

Although a plaintiff need not plead legal theories in a complaint, see Fed. R. Civ. P. 8(a), Mr. Benefiel has identified the theories he wishes to use—Eighth Amendment cruel and unusual punishment through deliberate indifference and through failure to intervene and First Amendment retaliation. Where a pro se litigant has expressly stated the legal theories he wishes to pursue, the district court is not required to analyze whether the allegations in the complaint might state a claim under a different legal theory. *See Larry v. Goldsmith*, 799 F. App'x 413, 416 (7th Cir. 2016) (citing *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 606-07 (7th Cir. 2009)). Thus, the Court analyzes Mr. Benefiel's claims only under the theories he has identified.

The claims which shall proceed are the following. Mr. Benefiel's claim that he was denied medical care for his testicular torsion shall proceed as an Eighth Amendment deliberate indifference claim against Dr. Millikan, Nurse Lee, Officer Finning, Officer Salgado[2], NP Teah Jackar, and Dr. Rodolfo Echeverria. This claim shall also proceed against Centurion under the theory recognized in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). A claim of retaliation in violation of the First Amendment for filing grievances and complaints will also proceed against Dr. Millikan and Officer Salgado.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through March 31, 2026,** in which to file a motion to reconsider the screening order.

Because Mr. Benefiel did not name Rice or Sgt. Gilbert as defendants in his amended complaint, they are **dismissed**.

## II.    Motion for Counsel

Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every pro se case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an

---

[2] Although Mr. Benefiel characterizes the deliberate indifference claim against Officer Salgado as a "failure to protect" claim, the Court understands that he is asserting a claim that Officer Salgado was deliberately indifferent to his serious medical needs because he was aware that Mr. Benefiel had a serious medical issue that medical staff was failing to treat. *See McGee v. Parsano*, 55 F.4th 563, 569 (7th Cir. 2022).

attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Mr. Benefiel has attempted to contact multiple attorneys with requests for representation without success. The Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. He should continue his efforts to find counsel.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt,* 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and

6

legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan*, 987 F.3d at 682 (quoting *Pruitt,* 503 F.3d at 655). "This assessment of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Mr. Benefiel states that this case is complex and will require research and investigation that he cannot complete while incarcerated. However, the facts of the case are largely known to Mr. Benefiel already. He knows the treatment he was or was not provided, he personally heard the statements made to him, and he has received his medical records, which he has successfully used to name new defendants in this litigation. He appears capable of representing himself in this case at the present time.

Mr. Benefiel states that he cannot represent himself because he has limited law library access. This is a challenge faced by most incarcerated litigants. He may file motions for extensions of time when appropriate if he cannot meet a deadline due to limited law library access. *See Decker v. Sireveld*, 109 F.4th 975, 984−85 (7th Cir. 2024) (finding no abuse of discretion when court denied the plaintiff's request for counsel because, despite being housed in a restricted housing unit with limited law library access, the court explained that it could extend deadlines as needed).

The Court will deny Mr. Benefiel's motion for assistance recruiting counsel.

### III.    Conclusion and Service of Process

Mr. Benefiel's motion for assistance recruiting counsel is **denied without prejudice**. Dkt. 27. The **clerk is directed** to send him a motion for assistance recruiting counsel form, which he must use if he chooses to renew his motion. The Court will remain alert to changes in

circumstances that may warrant reconsideration of the motion, such as a settlement conference or trial.

The Court **grants** the motion to amend the complaint. Dkt. [41]. The **clerk is directed** to docket pages 1-21 of the document at docket [41-2] as the amended complaint, and pages 22-123 as exhibits in support of the amended complaint.

The following claims are proceeding in this action: Eighth Amendment deliberate indifference claims against Centurion, Dr. Millikan, Nurse Lee, Officer Fennig, Officer Salgado, NP Teah Jackar, and Dr. Rodolfo Echeverria and First Amendment retaliation claims against Dr. Millikan and Officer Salgado.

The **clerk is directed** to terminate Rice and Sgt. Gilbert as defendants on the docket, to add Dr. Thomas Millikan, NP Teah Jackar, and Dr. Rodolfo Echevarria as defendants on the docket, and to update the spelling of Defendant "Selgado" to "Salgado" and "Finning" to "Fennig."

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendants Dr. Thomas Millikan, NP Teah Jackar, and Dr. Rodolfo Echevarria in the manner specified by Rule 4(d). Process shall consist of the amended complaint filed on February 4, 2026, dkt. [41-2], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the Centurion employees electronically.

Defendants Dr. Thomas Millikan and NP Teah Jackar are believed to be employees of Centurion. A copy of this Order and the process documents shall also be served on Centurion electronically. Centurion is ORDERED to provide the full name and last known home address of any defendant who does not waive service if they have such information. This information shall be filed ex parte.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date: _____3/13/2026_____

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Electronic service to Centurion
    Dr. Thomas Millikan
    NP Teah Jackar

Dr. Rodolfo Echevarria
Henry Community Health
1000 N. 16th St.
New Castle, IN 47362

SEAN QUINTON BENEFIEL
179610
NEW CASTLE – CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

David Douglas Becsey
ZEIGLER COHEN & KOCH
dbecsey@zcklaw.com

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com

9